UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CHARLES LOGAN,

                        Plaintiff,

          - against -

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-1813 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Charles Logan filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After Plaintiff filed for judgment on the pleadings, the parties stipulated to remand the case to the SSA, where Plaintiff was awarded roughly $119,010.00 in past-due benefits. Plaintiff's counsel, Daniel A. Osborn ("Osborn"), now moves for $29,752.50 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Osborn's motion is granted in part and denied in part, and he is awarded $27,123.37.

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Osborn and filed this action on March 9, 2023. (Dkt. 14-1, ¶¶ 2–3.) After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA. (*See* Dkts. 8, 11.) This Court then awarded Plaintiff $6,500.00 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (Dkt. 13; 03/06/2024 Dkt. Order.) On April 8, 2025, the SSA mailed Plaintiff a Notice of Award letter informing him that he would receive approximately $119,010.00 in past-due benefits, with 25% ($29,752.50) withheld as possible fees for his attorney.

1

(Dkt. 14-5, at 3.[1])  Osborn submits in his declaration that the Notice of Award was sent first to Plaintiff's prior counsel, who had represented Plaintiff before the SSA; prior counsel forwarded the Notice of Award letter to Osborn on April 15, 2025.  (Osborn Decl., Dkt. 14-1, ¶ 13.)

By motion filed on April 28, 2025, Osborn now seeks $29,752.50 for work performed before this Court.  (Dkt. 14-7, at 6.)  Along with Osborn's motion, counsel submitted a fee agreement, demonstrating that Plaintiff retained Osborn on a 25% contingency-fee basis, and itemized time records, indicating that he spent a total of 30.8 hours litigating this matter before this Court.  (Dkt. 14-3.)  Of those 30.8 hours, 25.4 hours were attorney time and 5.4 hours were paralegal time.  (*Id.*)  Deducting the paralegal time at $100 per hour results in an effective hourly rate of $1,150.10 for Osborn's 25.4 hours of attorney work, i.e., ($29,752.20 - $540) ÷ 25.4 hours.  *See*, *e.g, Long v. Comm'r of Soc. Sec.*, No. 18-CV-1146 (PKC), 2020 WL 6545904, at *3 (E.D.N.Y. Nov. 6, 2020) (deducting paralegal time at $100 per hour to calculate the effective attorney hourly rate); *Velasquez v. Comm'r of Soc. Sec.*, No. 21-CV-0892 (PKC), 2025 WL 1249604, at *3 (E.D.N.Y. Apr. 30, 2025) (same).

DISCUSSION

## I.     Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice of the benefits award," and courts in this Circuit presume that "a party receives communications

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $29,752.50.  (Dkt. 14-5.)  Based on this information, the Court infers that the total amount of benefits Plaintiff received was $119,010, i.e., 4 x $29,752.50.

2

three days after mailing." *Id.* at 87–89 & n.5. Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

The Notice of Award letter was issued on April 8, 2025, (Dkt. 14-1, ¶ 11), and the present motion was filed on April 28, 2025, (Dkt. 14)—20 days after the Notice was issued. Osborn claims that he did not receive the Notice of Award until April 15, 2025, when it was forwarded to him by Plaintiff's prior counsel. (Dkt. 14-3, ¶ 13.) Osborn submits email communications to that effect. (Dkt. 14-6.) This Court and others have concluded that the 14-day period starts "when *counsel* receives notice of the benefit award . . . because until counsel receives notice of the award, the amount of the award remains 'as-yet-unknown' to the relevant party filing the §406(b) motion." *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at *1 (E.D.N.Y. Jan. 11, 2022) (quoting *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sep. 30, 2021) (collecting cases)). Starting the clock when a plaintiff receives notice would otherwise seem inequitable, "depriving counsel of fees to which they are entitled through no fault of their own, and creating a perverse incentive for plaintiffs to conceal that they had received notice of benefits in order to avoid paying their attorneys and thereby keep the entirety of their awards for themselves." *Id.*

Accordingly, the Court calculates the 14-day filing period from the date Osborn received the Notice of Award from Plaintiff's prior counsel. Osborn received the Notice on April 15, 2025, (Dkt. 14-1, ¶ 13), and filed the present motion on April 28, 2025, 13 days later, (Dkt. 14). Osborn's motion is thus timely filed.

II.     **Reasonableness of the Requested Fee**

A.     **Legal Standard**

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the fee for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022). To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[2] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or

---

[2] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery."). "[W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." *Id.* (internal quotation marks and citations omitted)).

4

less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53 (citations omitted).

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)) (same).

### B.    Application

Here, Plaintiff retained Osborn pursuant to a 25% contingency-fee agreement. (Dkt. 14-2, at ECF[3] 2–3.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Osborn seeks the full 25% of Plaintiff's past-due benefits, $29,752.50. As previously noted, deducting $540 as compensation for the 5.4 hours of paralegal work performed would leave counsel with $29,212.50. At 25.4 hours of attorney work, that would be an effective hourly rate

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

of $1,150.10 per hour.  For the reasons explained below, the court finds that amount to be unreasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849.  Here, Osborn's briefing was professional and effective, identifying the relevant infirmities upon which the SSA agreed to a remand, (*see* Dkt. 8-1, at 11–12 (challenging the ALJ's evaluation of a medical expert's opinion as conclusory and failing to consider relevant factors); Dkt. 11-1 (stipulating to remand on the parties' agreement that the Commissioner will take further action to complete the administrative record)), and obtained the benefits Plaintiff sought— an award of past-due and future benefits, (*see* Dkt. 14-5).  For those reasons, the Court finds that this factor does not warrant a downward adjustment.  *See McEneaney v. Comm'r of Soc. Sec.*, No. 21-CV-10370 (LGS) (SLC), 2023 WL 9796621, at *3 (S.D.N.Y. Nov. 17, 2023) (reaching the same conclusion where counsel's advocacy prompted the Commissioner to agree to a remand, which in turn granted a plaintiff past due benefits), *report and recommendation adopted*, 2024 WL 815984 (S.D.N.Y. Feb. 27, 2024).

Second, the Court must determine whether Osborn was responsible for unreasonable delays.  *Fields*, 24 F.4th at 849.  Here, the Court notes that, in July 2023, Osborn requested, with consent from Defendant's counsel, a three-month extension to file Plaintiff's motion for judgment on the pleadings by the deadline of October 12, 2023.  (Dkt. 7.)  The Court granted this request.  (07/05/2023 Dkt. Order.)  Osborn filed Plaintiff's motion for judgment on pleadings on October 13, 2023, inexplicably one day later than the scheduled deadline.  (Dkt. 8.)  The Court finds that a three-month extension is beyond what this Court usually deems a reasonable length of delay, even though there is no indication that this delay was due to a lack of diligence.  *See, e.g., Finnegan v. Comm'r of Soc. Sec.,* No. 21-CV-2070 (PKC), 2024 WL 4494088, at *3 (E.D.N.Y. Oct. 15, 2024)

6

(finding an 11-day delay is "reasonable," but a longer delay "spanning almost four months" is significant enough to raise concerns of undue delay); *Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2023 WL 5310742, at *2 (E.D.N.Y. Aug. 17, 2023) (finding a delay of three months to support a slight downward adjustment where delay was due to attorney not placing a case on his docket). For this reason, the Court finds that a downward adjustment is warranted.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors to determine whether a requested amount qualifies as a windfall. *Id.* at 854–56. With respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 25.4 hours was a reasonable amount of time to spend on this matter. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98. 24 F.4th at 854. Here, Osborn performed work of a similar scale, reviewing a transcript of 539 pages, (Dkt. 6), drafting an opening brief of 14 pages, (Dkt. 8), and obtaining a stipulation of remand, (Dkt. 11). The Court finds that Plaintiff's counsel was equally if not more efficient than the plaintiff's counsel in *Fields*, spending nearly the same amount of time on the case "despite not having handled the case at the agency level and being unfamiliar with the administrative record." *Springer v. Comm'r of Soc. Sec.*, No. 19-CV-2032 (RRM), 2023 WL 2711313, at *4 (E.D.N.Y. Mar. 30, 2023); *see also infra* p. 8 (noting that Osborn did not represent Plaintiff at the agency level).

With respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that

7

Osborn did not represent Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See id.* Here, Osborn was not retained until Plaintiff filed this civil action on March 9, 2023. (*See* Dkt. 14-1, ¶¶ 2, 13.) Osborn thus lacks the type of attorney-client relationship built over multiple rounds of representation that distinguished the counsel in *Fields* from other windfall cases. *See, e.g.*, *Schultz v. Comm'r of Soc. Sec.*, No. 18-CV-5919 (PKC), 2022 WL 2918237, at *3 (E.D.N.Y. July 25, 2022); *Foster v. Comm'r of Soc. Sec.*, No. 19-CV-1743 (PKC), 2023 WL 7924172, at *4 (E.D.N.Y. Nov. 16, 2023). The Court finds that this factor also justifies a downward adjustment.

With respect to "the satisfaction of the disabled claimant," the Court presumes that Plaintiff is satisfied with the results, with no evidence to the contrary. *Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *4 (E.D.N.Y. June 12, 2023). Plaintiff did receive the past-due and future benefits he sought. However, that favorable outcome was delayed by Osborn's request to extend the filing deadline, causing Plaintiff to go "additional months without those benefits, which likely caused further hardship." *Schultz*, 2022 WL 2918237, at *3–4 (finding dissatisfaction where counsel was responsible for delays spanning "several months," which "caused further hardship" to claimant). While the Court finds that this factor also justifies a downward adjustment, because it is duplicative of the undue delay factor, the Court does not make an additional downward adjustment on this basis.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *Fields*, 24 F.4th at 855, the Court notes that

this case was not as uncertain as in *Fields*, where the SSA denied the claim again even after remand.  *Id.* at 855–56.  Here, the SSA stipulated to remand after the opening brief, (Dkt. 11), indicating that the case was far less uncertain than the underlying case in *Fields,* and did not require the sustained efforts of multiple rounds of representation.  *Foster*, 2023 WL 7924172, at *4 (making a similar observation).  The Court finds that this factor also justifies a downward adjustment in the context of this case.

For the reasons explained above, the Court finds the requested amount to be unreasonable, and reduces the amount to $27,123.37, which amounts to a *de facto* hourly attorney rate of $1,046.59 and an hourly paralegal rate of $100.  Additionally, upon receiving the § 406(b) award, Osborn must remit the $6,500.00 received pursuant to the EAJA to Plaintiff.

### CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Osborn is awarded $27,123.37.  Upon receipt of this award from the government, Osborn shall promptly refund Plaintiff $6,500.00, which represents the EAJA fees already received by counsel.  The case remains closed.

SO ORDERED.

/s/ *Pamela K. Chen*  
Pamela K. Chen  
United States District Judge

Dated: March 20, 2026  
        Brooklyn, New York

9